IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Paul Brown, | ) | |
| | ) | Civil Action No. 3:06-2465-PMD-JRM |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Kenneth B. Weedon, Associate Warden, | ) | **REPORT AND RECOMMENDATION** |
| of Broad River Correctional Institution; and | ) | |
| Henry D. McMaster, Attorney General of the | ) | |
| State of South Carolina, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, Paul Brown ("Brown"), is an inmate at the South Carolina Department of Corrections serving a sentence of thirty (30) years for criminal sexual conduct in the first degree with concurrent sentences for kidnapping, first degree burglary, and attempted criminal sexual conduct. On September 5, 2006, the Court received Brown's § 2254 petition for writ of habeas corpus.[1] Pretrial matters were automatically referred to the undersigned pursuant to Local Rule 73.02(B)(2)(c), DSC. Respondents filed a return and motion for summary judgment on October 31, 2006. Because Brown is pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on November 8, 2006, advising him of summary judgment procedure and his responsibility to properly respond to the motion for summary judgment. Brown filed his response on November 20, 2006. The undersigned issued an order on April 2, 2007, requiring respondents

---

[1]The petition is dated August 24, 2006. Since Brown is entitled to the benefit of the holding in Houston v. Lack, 487 U.S. 266, 270-76 (1988), the undersigned finds that the petition was filed as of August 24, 2006.

to file a supplemental brief. That brief was filed on May 11, 2007. A second <u>Roseboro</u> order was issued, and Brown filed a response to the supplemental brief on May 31, 2007.

A review of the record at that point revealed that Brown stated four grounds for relief in his petition:

1.    Denial of effective assistance of counsel;

2.    Conviction obtained by Petitioner's prior, expire conviction had been used to enhance his current sentence, by pleas of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequence of the plea;

3.    Conviction obtained by a violation of the privilege against self-incrimination; and

4.    Conviction obtained by a violation of the protection against double jeopardy.

Brown stated no facts in the space provided on the petition to support his grounds for relief. Respondents noted this deficiency in their return and argued only that the petition was untimely under the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Because Brown went into factual details in his response, and because it appeared that the petition might be timely, the undersigned ordered the supplemental briefing described above.[2]

### Procedural History

Pursuant to plea negotiations, Brown pled guilty to the charges in December of 1999. The charges stemmed from two incidents. On March 15, 1999, Brown broke into a residence in Hampton County and sexually assaulted the female occupant. On April 21, 1999, Brown forced his way into

_____

[2]Respondents now concede that Brown's petition is timely.

a residence in Allendale County and attempted to sexually assault two females. Brown was represented by Steve Plexico. No direct appeal was filed.

Brown filed an application for post-conviction relief ("PCR") on May 12, 2000. An evidentiary hearing was held on December 19, 2001. (App. 59). Brown was represented by Gerald Alan Kelly. The PCR court issued an order of dismissal on February 28, 2002 (App. 116). A Johnson[3] petition for writ of certiorari was filed by the South Carolina Office of Appellate Defense in the South Carolina Supreme Court raising the following question.

> Whether petitioner's guilty plea complies with the mandate set forth in Boykin v. Alabama?

(Res. Mem., Ex. 2). Brown also filed a pro se brief asserting:

1.     Ineffective assistance of trial counsel;

2.     Defective guilty plea; and

3.     The PCR court erroneously found that the provisions of [§] 17-27-45 [S.C. Code Ann.] does not offend the ex-post facto clause.

(Res. Mem., Ex. 3). The petition for writ of certiorari was denied by order of the South Carolina Supreme Court dated April 4, 2003. (Res. Mem., Ex. 4). The Remittur was returned on April 22, 2003 (Res. Mem., Ex. 5).

Brown filed a second PCR on September 18, 2003. (Res. Mem., Ex. 6). In this PCR, Brown asserted that his appellate counsel who filed the Johnson petition was ineffective. An evidentiary hearing was held on July 28, 2004 (Res. Mem., Ex. 8). The PCR court issued an order of dismissal on November 19, 2004 ruling that there was no constitutional right to counsel or the effective

---

[3] Johnson v. State, 294 S.C. 310, 364 S.E.2d 2001 (1988).

assistance of counsel in a collateral proceeding. (Res. Mem., Ex. 9). Counsel filed a <u>Johnson</u> petition

for writ of certiorari presenting the following issue:

> Did the lower court err by finding there is no right to appointed counsel for
> collateral review of a conviction, that the Sixth Amendment right to effective
> assistance of counsel does not extend to state post-conviction relief actions,
> that thereby Applicant failed to state a claim upon which relief can be granted
> in a post conviction relief proceeding and on these grounds dismissing
> petitioner's application.

Brown filed a pro se brief asserting that he received ineffective assistance of counsel prior

to and during his guilty pleas because counsel failed to advise him of his right to appeal and that the

trial court lacked subject matter jurisdiction to entertain his guilty pleas because the aggravating

circumstance of a prior conviction cannot be used as an enhancement unless the facts for such an

enhancement are determined by a jury. The petition for writ of certiorari was denied by the South

Carolina Supreme Court on December 6, 2006. The Remittitur was returned on December 27, 2006.

### Discussion

Since Brown filed his petition after the effective date of the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d),

as amended. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir.), *cert.*

*denied,* 521 U.S. 371 (1998) and <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525

U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--(1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or (2) resulted in
> a decision that was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). See Williams

v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court

must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that contradicts
> the governing law set forth in [Supreme Court] cases .... A state- court
> decision will also be contrary to this Court's clearly established precedent if
> the state court confronts a set of facts that are materially indistinguishable
> from a decision of [the Supreme] Court and nevertheless arrives at a result
> different from [the Court's] precedent.
>
>         * * *
>
> [A] state-court decision involves an unreasonable application of [the
> Supreme] Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the facts of
> the particular state prisoner's case. Second, a state-court decision also
> involves an unreasonable application of [the] Court's precedent if the state
> court either unreasonably extends a legal principle from [Supreme Court]
> precedent to a new context where it should not apply or unreasonably refuses
> to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's

application of clearly established federal law was objectively unreasonable." Id. at 1521.

    A.     LWOP

        At the time of Brown's 1999 convictions, South Carolina had enacted a "two strikes"

provision which established enhanced penalties for recidivists. See S.C. Code Ann. § 17-25-45. The

Solicitor filed statutory notice that the State would seek a sentence of life imprisonment without

parole ("LWOP") on Brown's burglary charges under the statute because Brown had prior burglary

convictions (Res. Mem., Ex. B, pp. 2 and 15). At the time of these prior convictions, the LWOP

enhancements were not in effect. The plea agreement reached prior to trial involved the State's

decision not to seek LWOP, but to allow a concurrent 30 year cap on Brown's Hampton and Allendale County charges to be served concurrently. (Id.). Several of Brown's present claims relate to his allegation that the LWOP enhancement could not have been applied to him.

Brown contends that his trial attorney was ineffective for failing to challenge the State's attempt to apply the recidivist statute to him in connection with is 1999 convictions. He argues that his attorney could have challenged the application of the statute because it violated the Ex Post Facto clause.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding

6

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

* * *

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test.  See <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty.  A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea.  He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in <u>McMann</u>." <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973).  When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance.  <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985).

7

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Brown's claim was specifically addressed and rejected by the PCR court. (App. 116). The court found that "(t)here were no grounds upon which counsel could have made a motion to prohibit the solicitor from seeking life without parole" based on application of the statute. The statute vests the Solicitor with authority to exercise prosecutorial discretion in seeking LWOP.

The PCR court further found that there was no basis to challenge the Solicitor's LWOP decision based on the Ex Post Facto clause. The court correctly cited State v. Jones, 344 S.C. 48, 543 S.E.2d 541 (2001) and Phillips v. State, 331 S.C. 482, 504 S.E.2d 111 (1998) for the proposition that there is "no ex post facto violation for [the] legislature to enhance punishment for [a] later offense based on [a] prior conviction, even though enhancement provision was not in effect at the time of [the] prior offense." (App. 119). These state court decisions are in accord with Fourth Circuit precedent. In U.S. v. Ethridge, 932 F.2d 318, 323 (4th Cir.), cert. denied, 502 U.S. 917 (1991), defendant was sentenced for being a felon in possession of a firearm under the enhanced provision of 18 U.S.C. § 924(e). The predicate felonies were committed prior to the enactment of the enhancement. The Court rejected defendants Ex Post Facto argument holding that "(t)he date of the present offense is determinative." (Id.).

8

In his response filed November 20, 2006, Brown (for the first time) asserts that he was not represented by counsel on the burglary convictions which were the basis of the noticed LWOP enhancement. The PCR court found that Brown had two or more prior burglary convictions. (App. 120). Brown includes this claim as a part of his ineffective assistance of trial counsel ground for relief. The record shows that Brown had a 1985 burglary conviction in Williamsburg County and a 1989 burglary conviction in Clarendon County. An exhibit to Brown's pleading filed May 31, 2007, shows that Brown was granted a new trial on the Clarendon County guilty plea and that he was found guilty by a jury on the charge in 1993.

Respondents offer two arguments with respect to this claim. First, they argue that Brown was, in fact, represented by counsel. They cite a previous habeas action filed by Brown challenging his 1993 Clarendon County burglary conviction, Brown v. Taylor, 0:96-1449-21BD. The Report and Recommendation authored by Magistrate Judge Marchant (a copy of which is attached) states that Brown was represented at trial by Harry Devoe, Esquire. Second, respondents argue that Brown failed to raise this claim in his PCR, it was not ruled on by the court, and it was not presented to the South Carolina Supreme Court for review. Brown has not responded to these arguments. The undersigned concludes that this portion of Brown's ineffective assistance of trial counsel claim is procedurally barred. See discussion below.

B.      Coerced Guilty Plea

In his second ground for relief, Brown asserts that his 1999 guilty pleas were involuntary because the State improperly used his prior convictions to coerce him into accepting the plea bargain. This claim was addressed by the PCR court under Brown's claim of ineffective assistance of counsel. As noted above, a claim of involuntariness of a guilty plea is subsumed within

the claim of ineffective assistance of counsel.  Hill v. Lockhart, 474 U.S. at 56.  For the reasons stated above, this claim is without merit.

Brown also repeats his procedurally barred claim that his prior convictions were uncounseled under his second ground for relief.  Brown further argues under this ground for relief that his due process rights were violated because the prior burglary convictions were used to enhance his sentence in violation of the holding in Apprendi v. New Jersey, 530 U.S. 466 (2000).  The Apprendi court held, that "(o)ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.  This claim is without merit because the Supreme Court specifically limited its holding to exclude prior convictions.  See also, Almendarez-Torres v. United States, 523 U.S. 224 (1998) and James v. United States, ___ U.S. ___, 127 S.Ct. 1586 (2007).

C.    Miranda Violation

Brown gave a statement to police officers after his 1999 arrest.  He now alleges that his interrogators failed to advise him of his Miranda rights.  This issue was addressed by the PCR court as a part of Brown's claim of ineffective assistance of trial counsel.  The PCR court found as a matter of fact that Brown never told his trial counsel that his confession was coerced. (App. 120). This claim was not raised in the Johnson petition (Res. Mem., Ex. 2) or in Brown's pro se brief. (Res. Mem., Ex. 3).

The Fifth Amendment provides: "No person ... shall be compelled in any criminal case to be a witness against himself." In Miranda, the Supreme Court recognized that the atmosphere of custodial interrogation in and of itself is inherently coercive. Miranda, 384 U.S. at 458. In order to ensure the Fifth Amendment privilege against self-incrimination is not undermined in such a

10

situation, the Supreme Court established certain procedural safeguards for counteracting the compelling pressures inherent in the custodial interrogation setting. See id. at 444. Specifically, Miranda requires that prior to any questioning in such a setting, the person being interrogated must be warned he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney. See id. "The Court's fundamental aim in designing the Miranda warnings was 'to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process." ' Colorado v. Spring, 479 U.S. 564, 572 (1987) (quoting Miranda, 384 U.S. at 469). The Supreme Court has held that "Miranda announced a constitutional rule that Congress may not supersede legislatively." Dickerson v. United States, 530 U.S. 428, 444 (2000). Following the rule of stare decisis, the Court further declined to overrule the Miranda decision, which "has become embedded in the routine police practice to the point where the warnings have become part of our national culture." Id.

        To ensure that law enforcement officials comply with Miranda's requirements, the Supreme Court established an exclusionary rule, holding that statements obtained in violation of Miranda must be excluded from the prosecution's case-in-chief even if the statements are otherwise voluntary within the meaning of the Fifth Amendment. Oregon v. Elstad, 470 U.S. 298, 307 (1985). The failure to administer Miranda warnings creates an irrebuttable presumption of compulsion, requiring the suppression of the accused's statements for purposes of the prosecution's case-in-chief. Id. at 306-07 and n. 1.

        A suspect may waive his Miranda rights after receiving the required warnings and agree to answer questions or make a statement during custodial interrogation, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444; see also Spring, 479 U.S. at 572; Moran v. Burbine, 475 U.S. 412, 421 (1986). In such a case, the suspect's statements are not

"compelled" within the meaning of the Fifth Amendment and may be introduced against him in the prosecution's case-in-chief without implicating constitutional concerns. See Spring, 479 U.S. at 573. The question whether an accused has validly waived his Miranda rights involves two distinct inquiries: (1) whether the relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception;" and (2) whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran, 475 U.S. at 421; see also Spring, 479 U.S. at 573. "Only if the 'totality of the circumstances surrounding the interrogation," ' including the background, experience, and conduct of the accused, "reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran, 475 U.S. at 421 (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)); see also North Carolina v. Butler, 441 U.S. 369, 374-75 (1979) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

In determining whether a valid waiver has been made, the Court need not inquire into the state of mind of the police, which is "irrelevant to the question of the intelligence and voluntariness of the suspect's election to abandon his rights." See Moran, 475 U.S. at 423. In addition, the "Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege," such as that he may be questioned and his statements used against him in a different criminal investigation. Spring, 479 U.S. at 574. Nor does the Constitution require the police to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." Moran, 475 U.S. at 422. As long as a suspect's voluntary decision to speak to law enforcement officials is made with full awareness and comprehension of all the information Miranda requires the police to convey-i.e ., that

he has the constitutionally-protected right to remain silent and to have an attorney present during custodial interrogation, and that whatever he chooses to say in response to police questioning may be used as evidence against him-his waiver is knowing and intelligent within the meaning of Miranda. See Spring, 479 U.S. at 574-75; see also Moran, 475 U.S. at 422-24.

On federal habeas corpus review of petitioner's state conviction, petitioner has the burden of proving that he did not competently and intelligently waive his constitutional rights. Johnson, 304 U.S. at 468-69 (involving waiver of right to assistance of counsel). Although the ultimate determination of a valid Miranda waiver is a mixed question of law and fact not subject to the presumption of correctness, Boggs v. Bair, 892 F.2d 1193, 1199 (4th Cir. 1989), *citing* Miller v. Fenton, 474 U.S. 104 (1985), the state court's factual findings supporting its waiver determination are presumed correct under 28 U.S.C. § 2254(e)(1).  Moreover, in this federal habeas corpus proceeding, the state court's disposition of petitioner's Miranda claim will not be overturned unless it (1) was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or (2) was based on an unreasonable determination of the facts in light of the record evidence. 28 U.S.C. § 2254(d); Williams, 529 U.S. at 402-03.

Brown's claim is largely undeveloped based under these principles.  The PCR court found the testimony of Brown and his sister that the confession was given after Brown was tortured at the Hampton County Jail to be not credible. (App. 120).  Further, Brown's guilty plea foreclosed his right to challenge non-jurisdictional defects which occurred prior to the entry of his plea. Tollett v. Henderson, 411 U.S. 258, 267-68 (1973). Even if this claim is considered as a part of Brown's claim of ineffective assistance of trial counsel, it is precluded as a result of the PCR court's factual finding. See 28 U.S.C. § 2254(e)(1).  Last, this claim is procedurally barred because it was addressed only as ineffective assistance of counsel in the state courts.  See discussion below.

13

D.    Double Jeopardy

Under the Fifth Amendment of the United States Constitution, a person may not be "twice put in jeopardy of life or limb" for the same offense. In general terms, this language has been interpreted to bar prosecution in the following three situations:

1.   Where a person would be tried for the same offense after an acquittal;

2.   Where a person would be tried for the same offense after a conviction; or

3.   Where a person would receive more than one punishment for the same offense.

See Benton v. Maryland, 395 U.S. 784 (1969) and North Carolina v. Pearce, 395 U.S. 711 (1969).

Brown appears to argue that using his prior convictions to enhance his 1999 convictions subjected him to double jeopardy. This argument is without merit. Sentencing under a recidivist statute "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." Gryger v. Burke, 334 U.S. 728, 732 (1948). Further, this claim was not raised in the state courts is procedurally barred. See discussion below.

E.    Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

14

1.       Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)  there is either an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

(2)   An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)   A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  See O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[4] If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. See Rose v. Lundy, supra.

---

[4]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

2.      Procedural bypass[5]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

---

[5]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

17

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, Id., or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

19

5.     Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents.  Gray v. Netherland, 518 U.S. at 165-66.  It is petitioner's burden to raise cause and prejudice or actual innocense.  If not raised by petitioner, the court need not consider the defaulted claim.  Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

After denial of the PCR, appellate counsel filed a Johnson petition for writ of certiorari[6] with the South Carolina Supreme Court.  In Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988), the South Carolina Supreme Court adopted a procedure for appeal where appellate counsel concludes that the PCR applicant has no meritorious grounds to present.  Counsel is required to file the Johnson petition raising any issue which is arguably appealable and requesting leave to withdraw as attorney for the petitioner on appeal.  A copy of the brief is furnished to the applicant and he is notified that he has a specific period of time to furnish further information to the Supreme Court for consideration in making a determination as to the Johnson petition.  The applicant may file a pro se brief raising additional issues.  Foster v. State, 298 S.C. 306, 379 S.E.2d 907 (1989).  In ruling on a Johnson petition for writ of certiorari, the South Carolina Supreme Court necessarily considers the issue or issues raised in the Johnson petition and any issues raised by the applicant in his pro se brief. Further, the South Carolina Supreme Court conducts a review of the record when a Johnson petition is filed.  King v. State, 308 S.C. 348, 417 S.E.2d 868 (1992).  In so doing, the South Carolina Supreme Court will only consider those issues raised by the PCR application upon which evidence was presented **and** were ruled on by the PCR court.  The South Carolina Supreme Court applies a procedural bar to issues which do not meet this criteria.  Under South Carolina law, the PCR court

───────────────

[6]All appeals from the denial of a PCR application are made by seeking a writ of certiorari from the South Carolina Supreme Court.  See SCACR 227.

20

is required to make specific findings of fact and conclusions of law as to each issue raised in the PCR. See S.C. Code Ann. § 17-27-80 and Rule 52(a) SCRCP. Bryson v. State, 328 S.C. 236, 493 S.E.2d 500 (1997). Counsel is required to object to any deficiencies in the order of the PCR court. McCullough v. State, 320 S.C. 270, 464 S.E.2d 340 (1995). This duty falls on the PCR applicant if not raised by counsel in the Johnson petition. See Pruitt v. State, 310 S.C. 254, 423 S.E.2d 127, 128 n.2 (1992) ("the general rule [is] that issues must be raised to, and ruled on by, the post-conviction judge to be preserved for appellate review."). See also, Padgett v. State, 324 S.C. 22, 484 S.E.2d 101 (1997) (issues not ruled on by PCR court are not preserved for appeal). Thus, when considering a Johnson petition, the South Carolina Supreme Court considers only those issues raised by the Johnson petition, raised in any pro se brief or petition filed by the applicant, and those issues specifically ruled on by the PCR court.

As discussed above, Brown failed to present several of his present claims to the South Carolina Supreme Court for review. He makes no argument that his default should be excused. These claims are, therefore, procedurally barred.

### Conclusion

Based on a review of the record, it is recommended that respondents' motion for summary judgement be granted and the petition dismissed without an evidentiary hearing.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

June 20, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

21

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).